EZRA H. GLEASON, Plaintiff in Error, *vs.* EDGAR L. DAY.

ERROR TO DANE COUNTY COURT.

Heard August 10.]                    [Decided November 15, 1859.

*Replevin—Creditor—Purchaser.*

On the trial of an action by D. against G. for the conversion of property, G. asked the court to instruct the jury; that if A. was indebted to G. and the property was turned out in payment of that debt, in good faith, and without any knowledge on the part of G. of the claim of D. to the same property, then G. was entitled to the protection of the statute as a *bona fide* purchaser. Held that this instruction ought to have been given.

The doctrine is well settled that where a creditor who receives a *bona fide* transfer of chattels from his debtor in discharge of a pre-existing debt, is a purchaser in good faith, as much as if he had purchased and paid a full consideration at the time of the sale.

This was an action brought by Day against Gleason in the county court for Dane county, for the wrongful taking of a horse and harness. Gleason denied that the property belonged to Day, and claimed it as his own. The case was tried by a jury who found for the plaintiff, Day, and assessed the property at $152, and judgment was rendered on that verdict. From the testimony of Day it appears that Cook was indebted to him $152, and gave him a bill of sale of the horse and harness on the 36th of July, 1858. The horse remained and was kept at Pomeroy's afterwards, the same as he had been before, and was used by Cook in his business as before the sale. So Gleason had used him, and continued to do so. Pomeroy testified that Day had shown him a bill of sale at the date of it. Gleason took him away on the 8th of August. No account had been kept with Day, and there was no evidence on the books of the barn that the horse did not belong to Cook. Cook testified to the sale to both parties; Gleason on the 8th of August, and Day on the 24th of July. He was indebted to Day $152, and also to Gleason $1800. Did not tell Gleason of the sale to Day. Had never charged Day with

the horse, and had used him after sale, by Day's permission, as before.

Gleason testified to the purchase from Cook, for which he allowed on Cook's account $190 as payment. The horse was at Pomeroy's. After the sale by Cook to Gleason, Day said Cook was owing him, and he wanted Gleason to pay, but did not then claim the horse, nor show a bill of sale. Gleason and Pomeroy then testified to the value of the horse and the harness.

The testimony being closed, the county judge charged the jury in substance, that the plaintiff to recover had got to show that he purchased the property in good faith, and took immediate possession thereof, and continued in the actual possession; and the possession of the vendor after sale was presumptively fraudulent as to the creditors and subsequent purchasers in good faith. The main question was a question of fact as to the intentions of the parties; and if they were honest and acted in good faith, the plaintiff would be entitled to recover.

The defendant's counsel requested the county judge to charge the jury, that to entitle the plaintiff to recover, they must find that the defendant wrongfully took the property; a conversion, under the pleadings, was not sufficient to sustain the action. Which the county judge refused to do, and decided such was not the law. To which the defendant excepted.

The defendant's counsel requested said county judge to charge the jury that if Cook was indebted to the defendant, and the horse and harness were turned out in payment of that debt, in good faith, and without any knowledge on the part of the defendant of the claim of the plaintiff, he is entitled to the protection given by the statute to a *bona fide* purchaser. Which the county judge refused to do, and decided that such was not the law. To which decision and opinion the counsel for the defendant excepted.

From the judgment rendered in the case Gleason sued out a writ of error, and brought the case into this court.

*J. C. Hopkins*, for the plaintiff in error.

*S. U. Pinney*, for the defendant in error.

*By the Court*, COLE, J.   We think the only material error which intervened on the trial of this cause, in the county

court, or which is apparent upon this record, is the refusal of that court to give the last special instruction asked for on the part of the plaintiff in error. By that instruction the court in effect was asked to charge the jury that if Cook was indebted to the plaintiff in error, and the horse and harness were turned out in payment of that debt in good faith and without any knowledge on the part of Gleason of the claim of Day, that then Gleason was entitled to the protection given by the statute to *bona fide* purchasers. Or to state the proposition presented by the instruction, as we understand it, in a more general form : the court was requested to instruct the jury as a matter of law, that a creditor who takes property of his debtor, such property being at the time in the possession of the debtor, in payment of a pre-existing debt, without any knowledge at the time of sale, of any claim upon or of any previous sale thereof, to a third party; that in that case the vendee is a purchaser within the meaning and intent of § 5, of chap. 107, of the statute of frauds, page 614, R. S., 1858, and entitled to protection as such.

We do not know upon what ground the court refused to give this instruction, but as it contains a correct proposition of law, and one strictly applicable to the facts of the case, the plaintiff in error was entitled to have it given to the jury. It is true, the court had previously very properly charged the jury, that in order to recover, the plaintiff below must show that he purchased the property in good faith, and took immediate possession thereof, and continued in the actual possession; and the possession of the vendor after sale was presumptively fraudulent, as to creditors and subsequent purchasers, in good faith, and that it was for them to determine from the evidence whether the sale was fraudulent; or whether the intention of the parties in leaving the property in possession of the vendor was honest and fair ; but still by refusing to give the instruction asked, the jury might have supposed that as Gleason took

the property in payment of a pre-existing debt, that he was not a purchaser within the meaning of the statute. If the jury might have come to this conclusion in consequence of the court refusing to give the instruction asked, and such a conclusion would have been natural under the circumstances, then it is obvious that the plaintiff in error might have been greatly prejudiced by the ruling of the court upon that point.

As to the proposition of law involved in the instruction refused, namely, as to whether a creditor, who receives a *bona fide* transfer of chattels, from his debtor, in discharge of a pre-existing debt, is a purchaser within this statute, we suppose the doctrine to be settled that he must be so regarded. For even in the celebrated *Twyne's* case, where the debt due Pierce was the consideration for the sale made, the court held that there was a good and sufficient consideration to sustain the sale, although the secrecy of the sale, non-delivery of the property, and other badges of fraud, raised the presumption that the whole transaction was collusive. 1 Smith's Lead. Cases, *Twyne's* case, and note, § 1.

We have not been referred to any case where it has been decided that a creditor, who has taken personal property from the vendor, in discharge of a pre-existing debt, was not a purchaser within § 5, of chap. 107, R. S., 1858. And generally there is no distinction made under this section, where the possession is retained by the vendor, between a case where the conveyance is upon a new and full consideration, and where it is made to a creditor in consideration of former indebtedness.

In *South Carolina* it is established that where a pre-existing debt is the consideration of a conveyance, the retention and use of the property by the vendor without a new agreement to that effect on adequate consideration, is a fraud in law. *Smith vs. Henry*, 1 Hill, 52; *Anderson et al. vs. Fuller et al.*, McMullan's Eq. R., 27.

But in the great mass of authorities upon this branch of law, the contest appears to have been, whether the inconsistency of the possession of personal property with the terms and effects of the bill of sale, should be considered as conclusive evidence of fraud ; or whether the retention of such possession by the vendor did not raise a strong presumption that the sale was fraudulent, and devolve upon the party sustaining the sale, the burden of proving the good faith and fairness of the transaction. However, it is unnecessary to enter into this discussion at the present time, and it would be an idle affectation of learning to do so. All the authorities, both English and American, will be found in the editor's notes to *Twyne's* case, 1 Smith's Leading Cases, p. 33 ; to which reference can be had for the decisions upon the subject of sales and mortgages of chattels without delivery of possession.

In the case at bar both parties claim the property in controversy by virtue of a sale to each of them from Cook, the vendor. Both were creditors and took the property in payment of pre-existing indebtedness. The consideration therefore in each case was the same and equally meritorious. But Day claimed the property by virtue of the first sale. And it appears the validity of this sale was attacked by the plaintiff in error, upon the ground that it was not an absolute *bona fide* sale. And we infer from the evidence that an effort was made to show that the sale from Cook to Day was invalid, by proving that Cook retained possession of the property after the ·sale, and used it as before. If the fact had been established that Cook retained possession of the horse and harness after the sale to Day, and had the apparent ownership of the property, it would, in the language of the statute, raise a presumption that the sale was fraudulent and void, as against creditors of the vendor, or subsequent purchasers in good faith ; and it would devolve upon Day the necessity of explaining this possession, and the fairness and honesty of the transaction.

Hence the pertinency of the instruction asked for on behalf of the plaintiff in error, and refused by the court.

The question put to the witness, Pomeroy, as to who paid him for keeping the horse while in his barn, was properly ruled out as being too general, and not confined to the time after the sale from Cook to Day. It is quite obvious that it was immaterial who paid for keeping the horse before the sale, since it could have no possible bearing upon the validity or *bona fides* of that contract.

But, for the reason already assigned, we think the judgment of the county court must be reversed and a new trial ordered.